*John J. Strickland, Rupert A. Brown, G. W. Westmoreland,* and *H. W. Davis,* for defendant.

## JOHN P. KING MANUFACTURING COMPANY *v.* CITY COUNCIL OF AUGUSTA *et al.*

1. Construing the conversations and correspondence between the City Council of Augusta and the plaintiff, respecting the alleged contract, in the light of the charter powers of the city in acquiring the Augusta canal,

Waters, 40 Cyc. p. 843, n. 7.

and the acts of the parties with reference thereto, a contract to furnish water-power by the former to the latter, at a specified rate perpetually, is not made out.

2. The court did not err in refusing an injunction, and in sustaining the demurrer and dismissing the petition.

No. 5624. MAY 13, 1927.

Equitable petition. Before Judge Franklin. Richmond superior court. August 13, 1926.

*Bryan Cumming* and *Cumming & Harper,* for plaintiff.

*Archibald Blackshear* and *Callaway & Howard,* for defendants.

HILL, J. The John P. King Manufacturing Company brought an equitable petition against the City Council of Augusta and Julian M. Smith, mayor, to enjoin the city from enforcing an ordinance adopted August 24, 1924, fixing the rate and price of water-power furnished its customers from the Augusta canal, for the period beginning March 7, 1926, and ending March 7, 1936, at $11 per horse-power for day use and $3.50 per horse-power for night use, per annum. The application for injunction applies only to 1244.3 horse power, which the plaintiff claims that it has the right to use in perpetuity at the former rate of $5.50 per horse-power for day use. The 1244.3 horse-power is the amount of power which the plaintiff began to use and take from the canal, according to its petition, on December 1, 1883, upon the completion of its cotton mill. The plaintiff also prayed for an injunction enjoining the defendants from contracting away to any other person the water-power, or from interfering with the plaintiff's right to the same. A temporary restraining order was granted, and the City Council of Augusta made response by way of demurrer and answer. The case came on to be heard on the petition, demurrer, answer, and evidence submitted by affidavits by the parties. The judge rendered a judgment denying an injunction, and also sustained the demurrer and dismissed the petition. To these judgments the plaintiff excepted.

The controlling question in the case was whether the City of Augusta had theretofore entered into a contract with John P. King Mfg. Co. to supply it with water-power at the specified rate of $5.50 per horse-power per annum in perpetuity, or had made a grant to the plaintiff of the right to have a certain water-power for a specified rate, which right, under all the surrounding facts, the city was estopped from withdrawing. It therefore be-

comes necessary to determine whether, from the allegations of the petition and the evidence, there was a grant or a contract between the parties as to the duration of the contract. The record discloses in substance that the Augusta Canal Company was organized as a private corporation with power to construct a canal and operate the same by furnishing water-power to manufacturing establishments located on or adjacent to the canal, and that the City Council of Augusta under proper legislative authority became the successor in title to all the property and franchises of this private corporation. After the City of Augusta had thus acquired the Augusta canal properties, the promoters of the John P. King Mfg. Co. made a verbal application to the mayor of the City of Augusta for information as to the terms upon which water-power could be obtained from the Augusta canal. To this application the then mayor of Augusta replied by letter on July 17, 1877, as follows: "The city council will furnish water-power from the Augusta canal under the usual restrictions to the extent of, say, 2500 horse power at $5.50 per horse-power per annum, payable quarterly." On June 6, 1881, the City Council of Augusta adopted a resolution authorizing the canal committee to grant the application of the John P. King Mfg. Co., and to offer it 1500 horse-power of water from the Augusta canal under the usual regulations for its use and at the price then charged other mills, to wit, $5.50 per horse-power per annum; and a copy of this resolution was transmitted to the temporary vice-president of the John P. King Mfg. Co. under date of June 14, 1881. On March 18, 1882, the then president of the John P. King Mfg. Co. addressed a letter to the mayor and council of Augusta, the material portions of which are as follows: "Referring to the application of the John P. King Mfg. Co. on June 1, last, for water-power, desire to say that said company is now ready and wishes to enter into a formal contract for the same at your earliest convenience." On May 24, 1882, the city engineer addressed a letter to Charles Estes, then president of the John P. King Mfg. Co., as follows: "I am requested by the mayor and canal committee to ask you to inform them what amount of water you desire to contract for, and that you will notify them immediately of the same." To this communication Charles Estes, president, replied under date of May 27, 1882, as follows: "In reply to yours of the 24th inst., would say

that in confirmation of ours of June 1, 1881, and March 18, 1882, that the John P. King Mfg. Co. wishes to contract for so much water per second as will produce, on 33 feet head and fall, 1500 horse-power gross, . . and to commence paying for the same with ordinary diligence on constructing our mill." The John P. King Mfg. Co. was incorporated on May 31, 1881, for a period of twenty years, with the privilege of renewal, which was from time to time renewed; and it is alleged that upon the faith of the grant of water-power as set forth above it erected a cotton-goods manufacturing plant at a cost of more than one million dollars, and began operations on December 18, 1883, and thereupon began to take from the Augusta canal 1244.3 horse-power, and has continuously from that day to the present time taken and used that amount of horse-power, in addition to other amounts specifically contracted for and not involved in this litigation, and has regularly paid therefor the sum of $5.50 per horse-power per annum.

The plaintiff contends that the foregoing conversations and correspondence between officials of the plaintiff and the City of Augusta, and the action of the plaintiff based thereon, constitute an irrevocable grant by the City of Augusta to the plaintiff to take and use, paying therefor $5.50 per horse-power per annum, water in perpetuity for at least 1244.3 horse-power; and that it also constitutes a contract based upon ample consideration, viz., the inducements held forth by the city, the building and putting into continuous operation of a manufacturing plant. There seems to be no material difference between the parties to the present suit as to the foregoing facts, and it is insisted by the plaintiff that the judgment of the court below, in denying an injunction and in dismissing the case, is error. The defendants deny that the facts set forth amounted to a contract, contending that the grant was without mutuality, and that even if a contract existed it could not be construed as a perpetual contract, and that the city has the right after the lapse of years to change or modify the same, so far at least as the rate charged for water is concerned, on account of changed conditions and the lapse of time. The sole question in this case is whether the John P. King Manufacturing Company has the right to use the water-power at the rate originally agreed upon, *perpetually*. Construing the conversations and correspondence between the City Council of Augusta and the John

P. King Manufacturing Co., respecting the alleged contract, in the light of the charter powers of the city in acquiring and operating the Augusta canal, and the acts of the parties with reference thereto, we are of the opinion that a contract to furnish water-power perpetually at the rates specified is not made out. In the above view of the case it is not necessary to decide whether or not a quasi public-service corporation can change its rates under a changed condition.

After carefully considering the whole case we are of the opinion that the court did not err in refusing an injunction, or in sustaining the demurrer and dismissing the case.

*Judgment affirmed. All the Justices concur.*